Jenkins v State of New York (2019 NY Slip Op 02932)





Jenkins v State of New York


2019 NY Slip Op 02932


Decided on April 18, 2019


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: April 18, 2019

526350

[*1]PEDDIE JENKINS, Appellant,
v
STATE OF NEW YORK, Respondent.

Calendar Date: January 15, 2019

Before: Egan Jr., J.P., Lynch, Devine and Rumsey, JJ.;

 Clark, J., vouched in.

Peddie Jenkins, Bennington, Vermont, appellant pro se.
Letitia James, Attorney General, Albany (Frank Brady of counsel), for respondent.



MEMORANDUM AND ORDER
Lynch, J.
Appeal from a judgment of the Court of Claims (Hard, J.), entered May 18, 2017, upon a decision of the court in favor of defendant.
As a result of an investigation by the Washington County Drug Task Force (hereinafter task force), claimant was charged with criminal sale of controlled substance in the third degree and criminal possession of a controlled substance in the third degree after a confidential informant purchased crack cocaine at claimant's home on February 10, 2012. Unable to make bail, claimant was incarcerated after his arrest in June 2012 until the start of his trial in December 2012. A jury acquitted claimant of both charges. Thereafter, claimant commenced this action seeking monetary damages for, among other things, malicious prosecution and false arrest and unlawful imprisonment. Following a bench trial, these claims were dismissed. Claimant now appeals.[FN1]
Generally, upon review of a nonjury verdict, we have broad authority to independently review the weight of the evidence, while giving due deference to the trial court's credibility and factual determinations (see Mahoney v State of New York, 147 AD3d 1289, 1290 [2017], lv denied 30 NY3d 906 [2017]). "To make out a claim for malicious prosecution, a claimant must establish: '(1) the commencement or continuation of a criminal proceeding by the defendant against [the claimant], (2) the termination of the proceeding in favor of the accused, (3) the absence of probable cause for the criminal proceeding, and (4) actual malice'" (Moulton v State of New York, 114 AD3d 115, 125 [2013], quoting Broughton v State of New York, 37 NY2d 451, 456 [1975], cert denied 423 US 929 [1975]; see Kenyon v State of New York, 118 AD2d 942, 944 [1986]). Here, only the latter two elements are at issue, i.e., whether defendant lacked probable cause for claimant's arrest and whether the criminal proceeding was initiated out of [*2]actual malice. The fact that claimant was indicted creates a presumption of probable cause (see De Lourdes Torres v Jones, 26 NY3d 742, 761 [2016]; Colon v City of New York, 60 NY2d 78, 82 [1983]). To overcome that presumption, claimant was required to "show malice . . . with proof that
. . . defendant falsified evidence in bad faith and that, without the falsified evidence, the authorities' suspicion of the [claimant] would not have fully ripened into probable cause" (De Lourdes Torres v Jones, 26 NY3d at 762).
The underlying event called for a confidential informant, wearing an audio transmitter, to go to claimant's home for the purpose of purchasing drugs. The members of the task force, including claimant's parole officer, Marco Torres, situated themselves outside the premises before the arrival of the informant. Once in place, Torres observed several men in a wood lot behind claimant's home, including claimant, and so informed Scott Gillis, a detective with the task force. Torres testified that, after the informant arrived and entered the residence, claimant drove a four-wheeler from the wood lot toward the residence. Gillis took a photograph of the four-wheeler leaving the wood lot. In the meantime, the audio recording indicates that the informant entered the residence and conversed with at least two other people, albeit the conversation is difficult to discern. After leaving the residence, the informant provided another member of the task force with the drugs purchased.
The crux of claimant's claim is that Torres falsely identified claimant as the person who drove the four-wheeler toward the residence. Notably, both Torres and Gillis testified that they observed that person drive the four-wheeler toward the residence, but neither witness actually observed the driver enter the residence. That said, the circumstances were presented to establish that claimant entered the residence and sold the drugs to the informant. For his part, the informant testified that after he entered the kitchen, claimant came in through the back door and sold him the drugs. Claimant, who is black, maintains that the four-wheeler was actually driven by one of his companions, who is white.
Ordinarily, we would defer to the trial court's resolution of such a conflict in testimony, and the determination of the Court of Claims here is supported by a reasonable view of the evidence. Beyond this conflict in testimony, however, claimant maintains that his testimony is validated by comparing the timing on a photograph of the four-wheeler with the timing of the informant's audio recording. Claimant maintains that the audio recording commenced at 2:50 p.m., lasting 13 minutes and 21 seconds. Utilizing this start time, the informant testified that he can be heard in his vehicle pulling away from the residence shortly before the recording ended at about 3:03 p.m. By comparison, the photograph was taken of the four-wheeler leaving the wood lot at 3:09 p.m., approximately six minutes after the informant had already left the residence. It bears emphasis that both Torres and Gillis observed claimant at the wood lot from the time that they arrived until he ostensibly got on the four-wheeler.
Notably, although Gillis initially estimated that he took the photo between 3:05 p.m. and 3:10 p.m., he then confirmed in his direct testimony that he set the right time and date on the camera. Gillis explained that he downloaded the audio and the photos to his computer and created the compact disc, which "contain[ed] the audio of . . . the wire as well as the photos." Gillis further confirmed that this exhibit included "a Windows program showing what's on [the] disc." He testified that the four-wheeler photograph was taken at 3:09 p.m. utilizing the program information. The People utilized this exhibit on their direct case to depict the timing of the events.
If taken at face value, this evidence would validate claimant's testimony that he did not sell drugs to the informant and that defendant should have known as much. Critically important, however, is the fact that this timing discrepancy was never addressed at claimant's criminal trial or the subject bench trial before the Court of Claims, and appears only to have been discerned by claimant's counsel in his appellate brief. Defendant points out in its brief that it was unable to verify when the audio recording began because it did not have the original compact disc. The discrepancy between the commencement of the audio recording and the taking of the [*3]photographs is a matter of minutes at best. Missing from this record is any testimony expressly validating the timing as to when the audio recording began. Had this discrepancy been called to the attention of the Court of Claims, corresponding testimony could have been entertained (see Telaro v Telaro, 25 NY2d 433, 439 [1969]; Corgan v DiMarco Group, LLC, 70 AD3d 1410, 1411 [2010]). As such, on this record, we decline to disturb the credibility determination made by the Court of Claims.
With respect to claimant's false arrest and unlawful imprisonment claim, a key element is whether the confinement was privileged (see De Lourdes Torres v Jones, 26 NY3d at 759). Probable cause for an arrest "constitutes a complete defense to the claims of false arrest and unlawful imprisonment" (Marrero v City of New York, 33 AD3d 556, 557 [2006]). We recognize that the presumption of probable cause attendant a grand jury indictment applies to a malicious prosecution claim, but not one for false arrest and unlawful imprisonment (see Broughton v State of New York, 37 NY2d at 456). To the extent that the Court of Claims applied that presumption in dismissing the false arrest and unlawful imprisonment claim, it did so in error. That said, and as claimant concedes in his brief, because claimant was arrested upon a warrant issued after the grand jury's indictment, the arrest was privileged (see Davis v City of Syracuse, 66 NY2d 840, 842 [1985]; Broughton v State of New York, 37 NY2d at 457; Moulton v State of New York, 114 AD3d at 119-120). For the reasons discussed above, we conclude that claimant has also failed to prove his claim for false arrest and unlawful imprisonment.
Egan Jr., J.P., Clark, Devine and Rumsey, JJ., concur.
ORDERED that the judgment is affirmed, without costs.



Footnotes

Footnote 1: Claimant limits his brief to these claims and has thus abandoned any argument with respect to certain other claims dismissed by the Court of Claims.